Melissa S. Hayward
  Texas Bar No. 24044908
  MHayward@FranklinHayward.com
Julian P. Vasek
  Texas Bar No. 24070790
  JVasek@FranklinHayward.com
**FRANKLIN HAYWARD LLP**
10501 North Central Expy., Suite 106
Dallas, Texas 75231
(972) 755-7100 (*tel.*)
(972) 755-7110 (*facsimile*)

**PROPOSED COUNSEL FOR THE DEBTORS**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| **In re:**<br><br>**LUKE'S LOCKER INCORPORATED,**<br><br>    Debtor. | **Case No. 17-40126**<br>**Chapter 11** |
| **In re:**<br><br>**2L AUSTIN, LLC,**<br><br>    Debtor. | **Case No. 17-40127**<br>**Chapter 11** |
| **In re:**<br><br>**THE QUALITY LIFESTYLE I, LTD.,**<br><br>    Debtor. | **Case No. 17-40128**<br>**Chapter 11** |

### DEBTORS' MOTION FOR JOINT ADMINISTRATION

TO THE HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

NOW COME Luke's Locker Incorporated ("LLI"), 2L Austin, LLC ("2LA"), and The Quality Lifestyle I, Ltd. ("TQL" and with LLI and 2LA, the "Debtors"), the debtors-in-possession in the above captioned bankruptcy cases, and file this *Motion for Joint Administration* (the "Motion"), in support of which they would respectfully show as follows:

## I.     JURISDICTION AND VENUE

1.      The Court has jurisdiction of this Motion under 28 U.S.C. § 1334, and this Motion constitutes a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this Court under 28 U.S.C. § 1408 and 1409.

## II.    BACKGROUND

2.      The Debtors operate retail stores throughout Texas, known as Luke's Locker, that specialize in running and fitness apparel, footwear, and other related goods, with a particular focus on providing excellent customer service.  They also provide training programs (running and walking) for their customers, and they help sponsor and host numerous running and walking events throughout the year, including everything from charitable 5Ks to free weekly social runs from the stores. Luke's Locker is a recognized leader in its industry, having won numerous D Magazine Readers' Choice and Best of Big D awards throughout the years.

3.      Luke's Locker's origins go back as far as 1970, when Don Lucas was a Dallas attorney and running enthusiast.  The problem then was that shoes specially designed for running were not generally available in Dallas.  So Mr. Lucas contacted a company in Oregon called Blue Ribbon Sports.  Blue Ribbon sold him shoes for his own use, and he, in turn, sold more of their shoes to fellow Dallas runners out of the trunk of his car.  Blue Ribbon Sports officially changed its name to Nike, Inc. in May 1971.

4.      Mr. Lucas's shoe business moved from the trunk of his car, to his garage, and eventually into the first Luke's Locker on Oak Lawn in Dallas.  In addition to running shoes, Luke's Locker carries workout gear, sportswear, cross training shoes, track and cross country spikes, tennis shoes, and a host of related accessories.  Today Luke's Locker has locations in Austin, Dallas, Fort Worth, Highland Village, Houston, Katy, Plano, Southlake, White Rock

Lake and The Woodlands. There is also a central distribution warehouse and administrative office in Dallas.

5. Unfortunately, as is the case with the brick-and-mortar retail business in general, Luke's Locker suffers from undercutting online competition, though it nevertheless has a fiercely loyal customer base. Luke's Locker also undertook an aggressive expansion campaign in recent years, opening numerous new stores. This led to the Debtors entering into various leases that, with the benefit of hindsight, are more burdensome than the Debtors anticipated.

6. These problems and others combined to create a serious liquidity crisis. Luke's Locker turns over inventory quickly and with good margins. But without adequate liquidity, Luke's Locker has had a harder and harder time acquiring inventory. And as Luke's began to fall behind with its principal vendors, those vendors began demanding cash in advance, further exacerbating the liquidity crisis. In spite of these problems, however, Luke's Locker still produced $34 million in revenue during the last fiscal year. So the Debtors have sought protection under chapter 11 in order to reorganize their financial affairs and reemerge from bankruptcy free of the burdens that led to their current predicament.

7. On January 24, 2017 (the "Petition Date"), the Debtors each filed a voluntary petition under chapter 11 of the Bankruptcy Code, thereby initiating the above-captioned cases. The Debtors continue to operate their businesses as debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code. The Court has not appointed a trustee or examiner in these cases.

### III.  ARGUMENT AND AUTHORITIES

8. By filing this Motion, the Debtors request that the Court order the joint administration of their bankruptcy cases under rule 1015, which authorizes joint administration

of a debtor's estate with the estate of an affiliated debtor.[1]  The Bankruptcy Code defines the term "affiliate" as, *inter alia*, an:

> (A) entity that directly … owns … 20 percent or more of the outstanding voting securities of the debtor …; [or]
>
> (B) corporation 20 percent or more of whose outstanding voting securities are directly … owned … by the debtor, or by an entity that directly … owns … 20 percent or more of the outstanding voting securities of the debtor ….

LLI owns 100 percent of 2LA and approximately 85 percent of TQL.  Thus, the Debtors are affiliates as that term is defined in the Bankruptcy Code.

9.   Before entering a joint-administration order, "the court shall give consideration to protecting creditors of different estates against potential conflicts of interest."[2]  Jointly administering the Debtors' estates is in the best interest of the estates and their creditors for a number of reasons.  First, the Debtors' operations are, to a certain extent, intertwined.  Second, by eliminating the need for duplicative notices, applications, motions, and orders and the concomitant time and expenses normally associated with such tasks, joint administration will relieve each estate of an administrative burden.  Joint administration will also relieve this Court of the administrative burden of entering duplicative orders and maintaining duplicative files.

10.  Because joint administration is only for administrative consolidation and not substantive consolidation of the estates, it will not affect the substantive rights of the Debtors' respective creditors.  Separate claims registers will be maintained, and each creditor will still be required to file a claim against its specific Debtor's estate. Finally, supervision of the administrative aspects of the bankruptcy cases by the Office of the United States Trustee will be

---

[1]   *See* FED. R. BANKR. P. 1015(b).

[2]   *Id.*

simplified. For those reasons, the Debtors submit that it is in the best interests of the estates and the creditors thereof for the Bankruptcy Cases to be jointly administered.

11. The Debtors request that the caption of their cases be modified to reflect the joint administration of the Bankruptcy Cases, as follows:

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **In re:** <br><br> **LUKE'S LOCKER INCORPORATED,** *et al.*, <br><br> **Debtors.** | **Case No. 17-40126-BTR-11** <br> **(Jointly Administered)** <br> **Chapter 11** |

12. The Debtors also ask this Court to direct that a notation in substantially the following form be entered on the docket in the 2LA and TQL bankruptcy cases to reflect their joint administration:

> An order has been entered directing the procedural consolidation and joint administration of the bankruptcy cases of *Luke's Locker Incorporated*, Case No. 17-40126; *2L Austin, LLC*, Case No. 17-40217; and *The Quality Lifestyle, Ltd.*, Case No. 17-40128; in accordance with Federal Rule of Bankruptcy Procedure 1015(b). The docket in Case No. 17-40126 shall be consulted for all matters affecting these cases.

13. The Debtors are not aware of any administrative or scheduling order that might require modification as a result of the requested joint administration.

14. In summary, the Debtors request that the Bankruptcy Cases be jointly administered for procedural purposes to the extent of the following:

    a. One docket shall be maintained for the Debtors' bankruptcy cases under the case number assigned to LLI;

    b. All pleadings, orders and other papers filed shall be captioned with the style reflected above, and shall reflect that the cases are jointly administered under the case number assigned to LLI;

    c. The United States Trustee shall conduct joint informal meetings with Debtors, if any are required;

    d. Each of the Debtors shall file separate Schedules of Assets and Liabilities, Statements of Financial Affairs and, as applicable, Lists of Equity Security Holders;

    e. Proofs of claim filed by creditors of any Debtor shall reflect the style and case number of the Debtor to which the claim relates and in which Debtor's case such claim is to be filed; and

    f. Separate Claims Registers shall be maintained for each Debtor.

## IV. **PRAYER**

WHEREFORE, CONSIDERING THE FOREGOING, the Debtors respectfully request this Court to enter an Order, substantially in the form attached hereto, granting the relief requested herein and awarding the Debtors such other and further relief as may be just and proper.

Dated January 25, 2017.

                                                               Respectfully submitted,

/s/ *Julian Vasek*
_____
Melissa S. Hayward
  Texas Bar No. 24044908
  MHayward@FranklinHayward.com
Julian P. Vasek
  Texas Bar No. 24070790
  JVasek@FranklinHayward.com
**FRANKLIN HAYWARD LLP**
10501 North Central Expy., Suite 106
Dallas, Texas 75231
(972) 755-7100 (*tel.*)
(972) 755-7110 (*facsimile*)

**PROPOSED COUNSEL FOR THE DEBTORS**

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon the attached service list via U.S. mail and/or CM/ECF on January 25, 2017

/s/ *Julian Vasek*
Julian Vasek