Melissa S. Hayward
  Texas Bar No. 24044908
  MHayward@FranklinHayward.com
Julian P. Vasek
  Texas Bar No. 24070790
  JVasek@FranklinHayward.com
**FRANKLIN HAYWARD LLP**
10501 North Central Expy., Suite 106
Dallas, Texas 75231
(972) 755-7100 (*tel.*)
(972) 755-7110 (*facsimile*)

**PROPOSED COUNSEL FOR THE DEBTOR**

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| **In re:** <br><br> **LUKE'S LOCKER INCORPORATED,** <br><br> Debtor. | **Case No. 17-** <br> **Chapter 11** |

## MOTION FOR AUTHORITY TO PAY PRE-PETITION WAGES AND OTHER EMPLOYEE-BENEFIT CLAIMS

TO THE HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

NOW COMES Luke's Locker Incorporated ("LLI" or the "Debtor"), and hereby requests that the Court enter an order pursuant to 11 U.S.C. §§ 105(a), 363, 507(a)(4), 507(a)(5), and 541(d) authorizing payment of pre-petition wages to employees and other employee-benefit claims (the "Motion").  In support of the Motion, the Debtor respectfully states and represents as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This matter concerns the administration of this bankruptcy estate; accordingly, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).  Venue is proper in this district

pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 363, 507(a)(4), 507(a)(5), and 541(d) and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II.  FACTUAL BACKGROUND

2. The Debtors[1] operate retail stores throughout Texas, known as Luke's Locker, that specialize in running and fitness apparel, footwear, and other related goods, with a particular focus on providing excellent customer service. They also provide training programs (running and walking) for its customers, and they help sponsor and host numerous running and walking events throughout the year, including everything from charitable 5Ks to free weekly social runs from the stores. Luke's Locker is a recognized leader in its industry, having won numerous D Magazine Readers' Choice and Best of Big D awards throughout the years.

3. Luke's Locker's origins go back as far as 1970, when Don Lucas was a Dallas attorney and running enthusiast. The problem then was that shoes specially designed for running were not generally available in Dallas at the time. So Mr. Lucas contacted a company in Oregon called Blue Ribbon Sports. Blue Ribbon sold him shoes for his own use, and he, in turn, sold more of its shoes to fellow Dallas runners out of the trunk of his car. Blue Ribbon Sports officially changed its name to Nike, Inc. in May 1971.

4. Mr. Lucas's shoe business moved from the trunk of his car, to his garage, and eventually into the first Luke's Locker on Oak Lawn in Dallas. In addition to running shoes, Luke's Locker carries workout gear, sportswear, cross training shoes, track and cross country spikes, tennis shoes, and a host of related accessories. Today Luke's Locker has locations in Austin, Dallas, Fort Worth, Highland Village, Houston, Katy, Plano, Southlake, White Rock

---

[1] Debtors 2L Austin, LLC and The Quality Lifestyle I, LP (collectively with LLI, the "Debtors") are debtors in affiliated bankruptcy cases.

_____

Lake and The Woodlands. There is also a central distribution warehouse and administrative office in Dallas.

5.    Unfortunately, as is the case with the brick-and-mortar retail business in general, Luke's Locker suffers from undercutting online competition, though it nevertheless has a fiercely loyal customer base. Luke's Locker also undertook an aggressive expansion campaign in recent years, opening numerous new stores. This led to the Debtors entering into various leases that, with the benefit of hindsight, are more burdensome than the Debtors anticipated.

6.    These problems and others combined to create a serious liquidity crisis. Luke's Locker turns over inventory quickly and with good margins. But without adequate liquidity, Luke's Locker has had a harder and harder time acquiring inventory. And as Luke's began to fall behind with its principal vendors, those vendors began demanding cash in advance further exacerbating the liquidity crisis. In spite of these problems, however, Luke's Locker still produced $34 million in revenue during the last fiscal year. So the Debtors have sought protection under chapter 11 in order to reorganize its financial affairs and reemerge from bankruptcy free of the burdens that led to its current predicament

7.    On January 24, 2017 (the "Petition Date"), the Debtors each filed a voluntary petition under chapter 11 of the Bankruptcy Code, thereby initiating the above-captioned cases. The Debtors continue to operate their businesses as debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code. The Court has not appointed a trustee or examiner in these cases.

### III.    RELIEF REQUESTED

8.    By this Motion, the Debtor seeks entry of an Order under sections 105(a), 363, 507(a)(4), 507(a)(5), and 541(d) of the Bankruptcy Code authorizing it, in accordance with stated policies (as modified from time to time), to pay certain pre-petition obligations to its employees

___

(the "Employees").  As more fully described below, these pre-petition obligations include (a) amounts owed for wages, salaries, taxes attributable thereto, and reimbursement of business expenses; and (b) benefit claims of Employees (including, without limitation, medical, holiday pay, other paid leave, 401(k) savings plans, and other similar programs or miscellaneous other benefits).  In addition to providing these benefits, the Debtor routinely makes deductions from the Employees' payroll relating to, for example, employee contributions to insurers, federal, state, and local tax withholdings, 401(k) savings plan, or other similar programs.  Collectively, these items will be referred to as "Pre-Petition Compensation".

9.　Prior to the Petition Date, The Debtor used ADP to assist it in the in-house administration of payroll to its Employees, and it offered a 401(k) program through Fidelity.  In addition, the Debtor's employee insurance and certain other employee benefits are covered by policies with United Health Care.  The Debtor requests that this Court approve its continued use of these companies for processing payroll, employee-benefit claims and its continued participation in these insurance policies.

10.　Pre-Petition Wages and Reimbursable Expenses.  The Debtor currently employs approximately 39 Employees in operating the Debtor's business. The last pre-petition pay date was Friday, January 13, 2016, and that pay date paid Pre-Petition Compensation for December 26, 2016 through January 8, 2017, for both salaried and hourly employees.  The Debtor makes payroll one week in arrears, so, as of the Petition Date, Pre-Petition Compensation owed to the Employees would be for services provided from January 9 through 22, 2017.  This pay is critical to each Employee, and delay in receipt of such pay by the Employee would seriously impair morale and jeopardize the Debtor's ongoing operations.

11. Additionally, in the ordinary course of business, some of the Employees incur a variety of business expenses, including, without limitation, travel expenses, materials, and other miscellaneous business goods that are reimbursed or paid by the Debtor. It would be inequitable and cause an undue hardship if those Employees were forced to bear those expenses, all of which were incurred on behalf of the Debtor with the expectation that they would be reimbursed or paid promptly. Such expenses are typically paid by the Debtor as they are submitted and processed. As of the Petition Date, the Debtor does not believe that much is owed on account of pre-petition, reimbursable, employee-benefit expenses. However, to the extent that such amounts were owed, the Debtor requests authority to pay them up to a maximum amount of $200 each.

12. <u>Pre-Petition Employee General Welfare Benefits.</u> Like most major businesses, the Debtor provides its Employees with certain general-welfare benefits, including, without limitation, insurance, holiday pay, other paid leave, 401(k) savings plans, and other similar programs or miscellaneous other benefits. These additional benefits are an integral part of each Employee's total compensation package. Interruption of such additional benefits would seriously disrupt the morale of the Employees and would undermine the Debtor's efforts to preserve the value of its estate. Thus, the Debtor requests authority to pay certain pre-petition amounts attributable to such benefits from time to time as and when such amounts become due in the ordinary course of business.

13. <u>Insurance Benefits.</u> The Debtor requests authority to pay, from time to time, as and when due, certain pre-petition claims, premiums, and administrative expenses related to insurance benefits (collectively, the "<u>Pre-Petition Benefits</u>") for Employees and its eligible dependents. The Debtor provides the Employees with medical insurance through a fully insured program offered through United Health Care (the "<u>Plan</u>"), and the monthly insurance premiums

paid by the Debtor approximate $9,600 a month. The Debtor requests this Court's permission to pay all of its obligations under the Plan for Employees that arose pre-petition, including the obligation to pay insurance premiums, without further Order from this Court. To the extent a premium payment is owed, the Debtor seeks authority from this Court to allow it to make such payments as are necessary to insure that prepetition claims of Employees are honored and continued in force without interruption.

14.    If the Pre-Petition Benefits claims of Employees are not paid, certain health-care providers would seek payment directly from the Employees and might refuse to provide continuing medical services or treatment to them. Permission to pay the Pre-Petition Benefits is particularly necessary for those Employees who currently are receiving services or who are recuperating from recent medical treatment. In addition, these employees might not receive disability-income (replacement) payments. The morale of the Employees would then be seriously undermined if medical benefits were interrupted. More importantly, however, the Debtor wants to avoid the risk that the Employees will not be given needed treatment because health-care providers have not been paid for pre-petition services. Therefore, the Debtor requests authority to take all steps necessary to maintain continued medical benefits for the Employees as necessary.

15.    <u>Honoring Pre-Petition Checks and Electronic Transfers</u>. The Debtor requests that, to the extent available, all applicable banks and other financial institutions shall be directed to receive, process, honor, and pay all checks presented for payment and to honor all funds-transfer requests made by the Debtor relating to the claims addressed herein regardless if such checks were presented or fund-transfer requests were submitted before or after the Petition Date. The Debtor estimates that such checks aggregate a *de minimis* amount. The Debtor further requests

authority to issue post-petition checks, or to effectuate post-petition fund transfers for replacement checks regarding the relief requested herein if such checks or requests were previously dishonored or denied because of the commencement of this case.

16. <u>Payroll Deductions</u>.  As with other major corporations, certain of the benefits offered by the Debtor to the Employees, such as insurance, involve payroll deductions as Employee co-contributions or otherwise.  In such cases, the Debtor deducts certain amounts from an Employee's payroll check and subsequently pay those funds, along with any required employer co-contributions, to the appropriate third party.  The Debtor also routinely and ordinarily makes deductions from the Employees' payroll relating to federal, state, and local-tax withholdings, employee-savings programs, charitable-contributions, garnishments, and other similar programs.  The Debtor requests authority to pay over to the appropriate parties all such funds in accordance with existing company policies and practices.

### IV.     <u>BASIS FOR REQUESTED RELIEF</u>

17. The Debtor believes that the majority, if not all, of the amounts covered by this Motion are entitled to priority-claim status under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

18. Section 507(a)(4) of the Bankruptcy Code grants employees priority claims for:

> allowed unsecured claims, but only to the extent of $10,000 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for— wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor. 11 U.S.C. § 507(a)(4).

Likewise, under section 507(a)(5) of the Bankruptcy Code, employees are granted a priority claim under the following circumstance(s):

> allowed unsecured claims for contributions to an employee benefit plan (a) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only (b) for each such plan, to the extent of — (i) the number of employees covered by each such plan multiplied by $10,000; less (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan. 11 U.S.C. § 507(a)(5).

19. As such, these claims would be entitled to payment in full under any chapter 11 plan. Authorizing the Debtor to make these payments at this time will affect only the timing of such payments. To the extent that such claims are not entitled to priority-claim status, its payment is justified under the "doctrine of necessity."

20. In so justifying, courts have used section 105(a) of the Bankruptcy Code, which codifies the equitable powers of bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," to authorize the post-petition payment of employee claims like those noted herein to preserve the debtor's going-concern value. *See Miltenberger v. Logansport, Crawfordsville and Southwestern Ry. Co.*, 106 U.S. 286, 311 (1882) (holding that "[m]any circumstances may exist which may make it necessary and indispensable to . . . the preservation of the property, for the receiver to pay pre-existing debts of certain classes out of the earnings of the receivership); *see also Mich. Bureau of Workers' Disability Comp. v. Chateaugay (In re Chateaugay Corp.)*, 80 B.R. 279, 285-87 (S.D.N.Y. 1987) (finding that a court's equitable powers include authorizing a debtor to pay prepetition debts). As such, a bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the

debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing *Miltenberger*, 106 U.S. at 311).

21. The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific provisions of chapter 11—sections 1107(a), 1108 and 363(b)(l) of the Bankruptcy Code—that authorize a debtor in possession to maintain and to operate the debtor's business and use estate property outside of the ordinary course of business. Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and to preserve the going-concern value of an operating business, and pre-petition claims may be paid if necessary to perform the debtor's duty. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim."). A bankruptcy court's exercise of its authority under section 105(a) of the Bankruptcy Code is also appropriate to carry out two central policies underlying Chapter 11: (a) to permit the successful rehabilitation of the debtor and (b) to preserve going concern value and maximize property available to satisfy all creditors.

22. Finally, to the extent funds are held in trust by the Debtor, those funds are not property of the bankruptcy estate under section 541(d) of the Bankruptcy Code, which excludes "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest." 11 U.S.C. § 541(d). It is well established under section 541(d) of the Bankruptcy Code that taxes collected on behalf of taxing authorities are not property of the estate. *Begier v. IRS*, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes, and withholding taxes are property held by the debtor in trust for another and, as such, are not property of the estate); *see also Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust are excluded

from the bankruptcy estate); *City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.)*, 41 F.3d 92, 98-103 (3d Cir. 1994) (holding that funds withheld from employee's paychecks may be subject to a trust and, thus, are not property of the debtor's estate, even when such funds are commingled with the debtor's other property). Here, amounts withheld and deducted from Employee's checks (as noted above) are funds held in trust by the Debtor for the benefit of another.

23. The relief sought herein is essential to the success of the Debtor's chapter 11 case. Here, to achieve success, it is critical that the Employees be paid without interruption and that the Debtor continue to honor its existing practices and policies for the pecuniary benefit of the Employees. Such payments are necessary to prevent irreparable harm to the morale of the Employees at the very time when its dedication, confidence, and cooperation are vital to this case.

### V.  **PRAYER**

BASED UPON THE FOREGOING, the Debtor requests that this Court enter an Order (a) authorizing payment of Pre-Petition Compensation to the Employees and other employee-benefit claims; and (b) awarding the Debtor such other and further relief that this Court deems just and proper.

Dated: January 27, 2017.

Respectfully submitted,

**FRANKLIN HAYWARD LLP**

By: */s/ Melissa S. Hayward*
    Melissa S. Hayward
      Texas Bar No. 24044908
      MHayward@FranklinHayward.com
    Julian P. Vasek
      Texas Bar No. 24070790
      JVasek@FranklinHayward.com

_____

                                          10501 North Central Expy., Suite 106
                                          Dallas, Texas 75231
                                          (972) 755-7100 (*tel.*)
                                          (972) 755-7110 (*facsimile*)

                                          **PROPOSED COUNSEL FOR THE DEBTOR**

## CERTIFICATE OF SERVICE

      This is to certify that on January 27, 2017, a true and correct copy of the above and foregoing document will be served by electronic filing, email, facsimile or US Mail First Class Postage Paid to the parties on the attached service list.

                                          */s/ Melissa S. Hayward*
                                          Melissa S. Hayward